UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

_____

**In re:**
    **Irene Eve Budziak,**      Filed & Entered      **Chapter 13 Case**
             **Debtor.**        On Docket       **# 05-10668**
                         October 13, 2009

_____

| Appearances: | *Todd Taylor, Esq.* | *Jan Sensenich, Esq.* | *Robert S. DiPalma, Esq.* |
|---|---|---|---|
| | Burlington, VT | Norwich, VT | Paul Frank + Collins, P.C. |
| | For the Debtor | Chapter 13 Trustee | Burlington, VT |
| | | Pro Se | For the Creditor |

**MEMORANDUM OF DECISION**
**DENYING CREDITOR'S MOTION FOR RECONSIDERATION**

    Creditor Chittenden Bank (the "Bank") has filed a motion for reconsideration (doc. # 27) of this Court's order approving the Debtor's modified chapter 13 plan (the "Modification Order") (doc. # 25). The Bank asserts that the Modification Order should be reconsidered, and the Court should take into account the Bank's position, even though the Bank failed to file any objection prior to entry of the Modification Order, based upon the excusable neglect doctrine set out in the Bankruptcy Rules and Federal Rules of Civil Procedure. Its objection is that the Debtor's modified plan compels the Bank to accept the Debtor's homestead property in full satisfaction of its claim, and hence to waive its deficiency claim which, according to the Bank, is a <u>sub rosa</u> objection to its claim without proper notice. For the reasons set forth below, the Court finds that Chittenden Bank has failed to establish the factual and legal basis required to warrant reconsideration, an opportunity to respond to the motion, or vacatur of any part of the Modification Order. Accordingly, the Court denies the Bank's motion.

**JURISDICTION**

    The Court has jurisdiction to adjudicate this contested matter pursuant to 28 U.S.C. §§ 157(b)(2)(L) and 1334.

**BACKGROUND FACTS & PROCEDURAL HISTORY**

    On May 5, 2005, Irene Eve Budziak (the "Debtor") filed a chapter 13 petition (doc. # 1) in which she listed homestead property that had a current market value of $275,000 subject to a first mortgage in favor of the Bank in the amount of $133,807. The Debtor's chapter 13 plan (doc. # 2) called for monthly payments of $334 for 42 months, plus a lump sum payment (in the 42nd month) in the amount of $50,000, and promised full payment of the allowed claims of all secured and unsecured creditors, including the

Bank.[1] At a hearing held on June 9, 2005, the Court confirmed the Debtor's "100% plan" and thereafter entered a confirmation order (doc. # 11). The Bank filed a proof of claim on June 21, 2005, asserting a secured debt in the amount of $133,203.73 (claim # 5-1).

On June 20, 2006, the Debtor filed a motion to modify her plan (the "Motion to Modify"): (i) indicating that she no longer had sufficient income to make plan payments; (ii) requesting authorization to sell her homestead by June 7, 2007 and to use the proceeds of that sale (rather than monthly plan payments) to fund the balance due under the plan; and (iii) representing that this sale plan approach would not diminish the treatment of any creditor as she projected the sale proceeds would be sufficient to provide full payment of the secured creditors and a 100% dividend to the unsecured creditors (doc. # 14). The motion declared that the Bank was adequately protected under the modified plan, even though the Debtor would be making no monthly payments to the Bank for up to one year, because there was $100,000 of equity in the homestead property that secured the Bank's mortgage debt. The notice of motion accompanying the Motion to Modify set July 12, 2006 as the deadline to file objections. No objections were filed. On July 19, 2006, the Court entered an Order (doc. # 16) granting the Motion to Modify.

However, as time passed, it became clear that the Debtor's projections had been overly optimistic. June 7, 2007 came and went, and the homestead property was not sold, as required by the modified plan.

On January 21, 2008, the Debtor filed a second motion to modify plan (the "Second Motion to Modify") (doc. # 22), offering the following arguments in support of her new plan:

> Debtor is no longer lived [sic] in her homestead in Richmond. She could not afford the property. The value of the property has dropped so precipitously that the Chittenden Bank is willing to accept a short sale of $50,000 to $80,000. Debtor now Plans to sell her camp (worth $40,000 to $50,000 to fund the Plan). If the camp is not sold by November 1, 2008, the case shall be dismissed or converted. The unencumbered business sporting good assets no longer exist. They were removed by a family member without Debtor's permission. They are unrecoverable. The wildcard exemption of $6490 that was placed on these business sporting good assets will now be placed on on [sic] the camp property.

Id., p. 1. On February 4, 2008, the Debtor filed a revised second motion to modify her plan ("Revised Second Motion to Modify") (doc. # 23), which was identical to the Second Motion to Modify except that it included a certificate of service, was accompanied by a notice of motion, and had a minor text change

---

[1] Paragraph 13 D of the plan set forth this explanation for the lump sum payment:
> This plan calls for a lump sum payment on or about month 42. The rationale for this is as follows: The debtor is a widow. Debtor's husband passed away in 10/2003. Debtor and her husband were running a business, Jonesville Country Store. When her husband passed, the business suffered great dislocation. Her son then started her in the business. Her son then got sent to Iraq by the National Guard in 11/2004. This caused the business to shut down. It is debtor's intention that, when the son returns from active duty, he then will resume the business with her. That is why the debtor does not want to sell the business inventory listed on Schedule B because she will need that for start up inventory. One way or another, through increased business sales, once the business resumes, through the sale or refinancing of the real estate in month 42, or through the sale of business inventory, debtor will be able to make the lump sum payment set forth in this plan.

(doc. # 2).

not germane to this contested matter. The certificate of service affirmed that the Revised Second Motion to Modify had been served on the Bank. The notice of motion set 4:00 p.m. on March 5, 2008 as the deadline for filing objections and stated that if no objections were timely filed, "the motion shall be deemed to be unopposed and the Court may issue an order approving/granting the [motion] without further hearing." Id. No objections were filed. On March 11, 2008, nearly a week after the expiration of the objection deadline, the Court entered an Order Granting the Second Motion to Modify the Chapter 13 Plan ( the "Modification Order") (doc. # 25).

On March 21, 2008, the Bank filed a Motion to Reconsider Order Granting Second Motion to Modify ("Reconsideration Motion") (doc. # 27). In that motion, the Bank did not articulate grounds for reconsideration of the Modification Order, but rather set forth its arguments in opposition to the Second Motion to Modify, urging the Court to deny the modification (which actually had been granted 10 days before) "as it relates to the treatment of the so-called homestead property." Id. The Bank contended that the proposed treatment "purports to modify Chittenden's secured creditor status by requiring it to accept the property in full satisfaction of the debt owed to the bank"; that it had not agreed to waive any deficiency that might exist after exercising its state law rights with respect to its collateral (the homestead property); and, consequently, the Debtor's treatment of the Bank's claim in the Second Modified Plan violated the provisions of 11 U.S.C. § 1322(b)(2). Id. It also asserted that because a large unsecured claim would likely remain after sale of the homestead property, the Debtor's treatment of the unsecured portion of the Bank's claim in the Second Modified Plan acted "as a sub rosa objection to that portion of Chittenden's claim in violation of the requirements of Rule 3007 and Vt LBR 3007-1(b)." Id.

On June 12, 2008, the parties filed a stipulation (doc. # 31) in which they agreed: (i) that the Bank's unsecured claim (as set forth in its proof of claim) would be allowed as a general unsecured claim; (ii) that the Bank would be granted relief from stay, under 11 U.S.C. § 362(d), to pursue a state court foreclosure action, and immediate entry of judgment with a 1-day redemption period; and (iii) that upon sale of the Debtor's homestead property at public auction, the Bank would reduce the amount of its claim in the bankruptcy case by the amount of net sales proceeds. Id. at ¶¶ 2-5. The proposed order filed with that stipulation provided only for relief from stay, and made no mention of the allowance of the Bank's claim. The Court entered the Order granting the Bank relief from stay (doc. # 33).[2]

On December 8, 2008, the parties filed a stipulated motion (doc. # 38) requesting that the Court adjourn for 60 days the hearing on the Motion to Reconsider that was set for the next day. Notwithstanding the terms of the June 2008 stipulation, the latter stipulated motion recited that the Reconsideration Motion, as well as the issue of whether the treatment, in the Second Modified Chapter 13 plan, of the

---

[2] Since the terms of this stipulation with respect to allowance of the Bank's claim were in contradiction to the terms set forth in the Modification Order and there was no hearing or Order approving the allowance of claims provisions in the stipulation, the Court considers these terms of the stipulation to be of no legal effect.

Bank's unsecured debt was authorized absent a determination made in an adversary proceeding, were still pending before the Court. It also recited that most of the Debtor's plan payments had been disbursed by the trustee to unsecured creditors, that the Bank had recently completed the state court foreclosure action and had sold the property, and that the parties wanted additional time to consider the effect of the Bank's amended unsecured claim on the status of the open issues.[3] Id.

The next hearing was held on March 31, 2009. At that time, the Court set a briefing schedule on the Reconsideration Motion and took the matter under advisement.

Pursuant to the briefing schedule, on April 13, 2009, the Bank filed a Supplemental Motion (doc. # 44) setting forth additional facts surrounding the parties' efforts to sell the Debtor's homestead property. This filing described the saga of the Bank's attempts to get paid by the Debtor and was supported by an affidavit from the Bank's counsel (see ex. to doc. # 44). In the memorandum of law section of the Supplemental Motion, the Bank presented two legal arguments. Its first argument was that "the Bank's rights as an unsecured creditor could be modified only by an objection to claim under 11 U.S.C. § 502(a) and Bankruptcy Rule 3007" (doc. # 44, p. 4). The Bank claimed that the plan "if modified as requested," resulted in the Bank's unsecured claim being disallowed. Id. This argument, however, focused on the merits as to why the motion to approve the Second Modified Plan should not have been granted, not on why the Bank was entitled to have the Modification Order reconsidered. The Bank's second argument was that the Court could treat the Bank's objection to the Second Modified Plan as timely, even though it was not filed until after the objection deadline had run, under the excusable neglect provision of Rule 9006(b)(1), relying upon Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993).

The Debtor has not opposed the Bank's Reconsideration Motion, but the chapter 13 trustee filed an objection (doc. # 45). The trustee construed the Bank's request for relief as one made under Fed. R. Civ. P. 60(b), applicable to bankruptcy proceedings pursuant to Bankruptcy Rule 9024. Id. His primary argument was that the Bank's Motion to Reconsider challenged the confirmed modified plan and as such was barred by res judicata. The trustee observed that the Bank received proper notice of the Debtor's Revised Second Motion to Modify Plan, which clearly set a deadline for objections. The trustee reasoned that even if the Bank had still been involved in negotiations with the Debtor when the Revised Second Motion to Modify was filed, "it could have filed a brief objection to preserve its rights to continue to negotiate its treatment. It did not do so, and based on the notice of default procedure [see Vt. LBR 9013-4], it should have known that an order would issue approving the motion." Id. The trustee added that whether the Bank had a valid objection to the modified plan, if it had been timely filed, "does not ipso facto mean that the bank, under Rule 60 has a right to reconsideration." Id.

---

[3] The claim register reflects that the Bank did not amend its proof of claim after this sale, or at any time since the original proof of claim had been filed on June 21, 2005.

4

## DISCUSSION

Before the Bank's substantive objections to the Second Modified Plan may be considered, the Court must determine the threshold question of whether the Bank has established grounds for reconsideration of, and relief from, the Modification Order. The Court will consider, in turn, each of the arguments the Bank and Trustee have raised.

### I.    Is "Excusable Neglect" Relief Available Under Rule 9006?

The Bank argues that under Pioneer, courts must consider four factors to determine whether to permit a late filing based upon "excusable neglect" under Rule 9006(b)(1): "[1] the danger of prejudice to the debtor; [2] the length of the delay and its potential impact on judicial proceedings; [3] the reason for the delay, including whether it was within the reasonable control of the movant; and [4] whether the movant acted in good faith. 507 U.S. at 395. The Bank contends that all four factors favor granting its Reconsideration Motion (doc. # 44). As to the first factor, the Bank insists that there is no danger of prejudice to the Debtor, as the motion seeks no further burden on the Debtor but to have the Bank's unsecured claim allowed in full, and the Debtor had, at one point, stipulated that the Bank's unsecured claim would be allowed in full. Thus, reasons the Bank, allowing the late-filed objection would not impact the Second Modified Plan or the fact that the Debtor had completed the plan and had been discharged. As to the second factor, the Bank avers that it moved promptly after it became clear that the consensual sale of the property was not going to happen and, with the cooperation of the Debtor and counsel, moved for relief from stay so the parties could determine the deficiency on the secured claim. The Bank points out that at the time it filed its Reconsideration Motion, no action had been taken that would have had an adverse impact on further proceedings. With respect to the third and fourth factors, the Bank states that the parties had been acting in good faith to attempt to conclude a consensual sale of the property, and "if a transaction could have been concluded so that the Bank would have received the proceeds of a sale without further action on its part, the need for further dispute over the terms of Debtor's plan would have been unnecessary." It stresses that it had been acting in good faith to conclude the sale that had been in the offing since the Debtor first amended her plan in mid-2006. Id.

Rule 9006 is entitled "Time" and Rule 9006(b) concerns "enlargement" of time periods, i.e., extension of deadlines. If a party files a motion for enlargement after the expiration of a specified time period, that movant must show "that the failure to act [within the specified timeframe] was the result of excusable neglect." Rule 9006(b)(2). This rule extends or enlarges the time during which parties may file papers with respect to an open matter.

> (b) Enlargement.
>
> (1) In general. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may

> at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1). There is no language in this rule to suggest that it provides a mechanism for re-opening a time period which has come to its legal conclusion by virtue of the entry of an order. Once an order is entered, a party who failed to file timely papers can obtain relief only by appealing the order or seeking vacatur or modification of the order. The Bank has not presented, and the Court has not found, any cases which indicate that Rule 9006(b) offers a basis for enlarging a time frame after entry of an order closed it. Hence, the Court finds Rule 9006 does not offer the Bank a basis for extending the due date of the Bank's objection or excusing its untimely filing of an objection based upon excusable neglect.

Even assuming, arguendo, that under Rule 9006(b) the Bank could obtain relief, nunc pro tunc, to file an objection to the Revised Second Motion to Modify, that would bring the Bank's prayer for relief into direct conflict with the res judicata effect of the Modification Order. See Celli v. First Nat'l Bank of Northern New York (In re Layo), 460 F.3d 289, 293-94 (2d Cir. 2006). It is well-settled that the Bankruptcy Rules cannot be used to override substantive limitations set forth in the Code because "in a conflict between the Code and the rules, the Code controls." In re Runkle, 333 B.R. 734, 737 (Bankr. D.Md. 2005) (quoting In re Stoecker, 179 F.3d 546, 552 (7th Cir. 1999)). Bankruptcy Code § 1327 makes clear that a confirmation order is not generally susceptible to collateral attack by creditors. It provides:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for, by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

§ 1327(a). The fact that the Order in question approves a modified plan rather than confirming an initial plan does not make a difference because "[u]pon the Court's approval of a proposed modification, the modified plan 'becomes the plan,' 11 U.S.C. § 1329(b)(2), and the modified plan has the res judicata effect described in 11 U.S.C. § 1327." In re Hart, 2009 WL 349834 at * 3 (Bankr. E.D. Tex. Feb. 9, 2009). See also In re Puckett, 193 B.R. 842, 845 (Bankr. N.D. Ill. 1996) (stating the "general rule" that applies if a creditor fails to raise an objection at the confirmation hearing or to appeal the order of confirmation: that failure to act "should preclude ... attack on the plan or any provision therein as illegal in a subsequent proceeding.") (quoting In re Chappell, 984 F.2d 775, 782 (7th Cir.1993)).

Therefore, based both on the plain language of Rule 9006 and the equitable principle of res judicata, the Court finds that Rule 9006(b) does not provide a basis to excuse the Bank's failure to timely object to the Revised Second Motion to Modify or to vacate (in part or in toto) the Modification Order.

## II. Is Relief from the Modification Order Available Under Rule 9024?

(a) Relief from the Entire Modification Order

The next question is whether Rule 9024, which incorporates Fed. R. Civ. P. 60(b) that allows for relief from a judgment or order, may be applicable here. Specifically, Rule 60(b)(1) provides that, "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." Depending on the order challenged, relief under Rule 9024/60(b) may or may not be barred by the doctrine of res judicata. See In re American Preferred Prescription, Inc., 255 F.3d 87, 92 (2d Cir. 2001) (citing cases involving bankruptcy court orders approving sales of property of estate for proposition that "some orders of bankruptcy courts. . . are final judgments which, if not timely appealed (or timely challenged under [Rule 60(b)]) are entitled to res judicata effect."). For example, "[a]lthough confirmed plans are res judicata to issues therein, the confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding, or were not sufficiently evidenced in a plan to provide adequate notice to the creditor." In re Christy, 2005 WL 5419055 at * 6 (Bankr. N.D.N.Y. July 14, 2005) (quoting In re Enewally, 368 F.3d 1165, 1173 (9th Cir. 2004). See Whelton v. Educ. Credit Mgmt. Corp., 432 F.3d 150, 154-55 (2d Cir. 2005) (observing that confirmation order could not be accorded res judicata effect because creditor lacked proper notice).

The fact that the Second Amended Plan has already been confirmed brings § 1330(a) into the picture because the Bank is, in effect, seeking to revoke[4] a chapter 13 confirmation order. That Code provision states:

> On request of a party in interest at any time within 180 days after the date of entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

11 U.S.C. § 1330(a).

A number of courts – most notably, the Third Circuit in Branchburg Plaza Assocs., L.P. v. Fesq (In re Fesq), 153 F.3d 113 (3d Cir. 1998) – have explored the interaction of § 1330 and Bankruptcy Rule 9024. The facts in Fesq are not dissimilar to the facts presented here. In Fesq, the moving creditor failed to file a timely objection to a chapter 13 plan and the court entered a confirmation order. The creditor immediately filed a motion to vacate the confirmation order under Rule 9024, asserting that its failure to make a timely objection was the result of a computer glitch, which constituted excusable neglect warranting relief from the order. The Third Circuit engaged in statutory interpretation of § 1330 and held that, based on the plain text of the statute, a confirmation order could only be revoked if the movant proved

---

[4] The district court in In re Whelton, 312 B.R. 508 (D.Vt. 2004), pointed out that the panel in Branchburg Plaza Assocs., L.P. v. Fesq (In re Fesq), 153 F.3d 113 (3d Cir. 1998), which examined § 1330, "used 'revoke' and 'vacate' interchangeably in its opinion." Whelton, 312 B.R. at 519. Therefore, the Court addresses the import of § 1330 here even though the Bank did not specifically request "revocation" of the Modification Order.

fraud, and rejected the creditor's argument that Rule 9024's more expansive grounds for relief could also be used to challenge the confirmation order. The court burrowed deep into the statute's legislative history and found nothing to support the creditor's reading that § 1330(a) and Rule 9024 could be read in tandem. Id. at 117-18. It also found ample precedent that undermined the creditor's reading, id. at 118-19, including decisions by two courts in the Second Circuit: In re Klus, 173 B.R. 51, 57 (Bankr. D. Conn. 1994) (holding that where creditor did not object to a plan or did not appeal, and then sought revocation of the confirmation order and plan, § 1330 permitted revocation only if the confirmation order had been procured by fraud, and Rule 7001(5) required an adversary proceeding to revoke a confirmation order in any case), and In re Walker, 114 B.R. 847, 851 (Bankr. N.D.N.Y. 1990) (observing that the court could not revoke a valid confirmation of a chapter 13 plan unless confirmation was procured by fraud). The Third Circuit held that its reading of § 1330(a) "protect[ed] the finality of Chapter 13 confirmation orders," as Congress had intended, and found that since the creditor had not asserted that the confirmation order had been procured by fraud, the district court's judgment affirming the bankruptcy court's denial of the creditor's motion to revoke was correct. Numerous courts have followed Fesq. See, e.g., Mason v. Young (In re Mason), 237 B.R. 791, 803 (10th Cir. BAP 1999); In re Smith, 2009 WL 243396 at * 3-4 (Bankr. D.Kan. Jan. 27, 2009); In re Coss, 2005 WL 5419055 at * 3-4 (Bankr. N.D.N.Y. July 14, 2005).

Following the well-reasoned analysis in Fesq, this Court holds that, under the facts and circumstances presented, the Bank is not entitled to revocation of the Order granting the Debtor's Revised Second Motion to Modify pursuant to § 1330(a).[5]

---

[5] Fesq did hint at some exceptions to the Code's rule that confirmation orders could be revoked only upon a finding of fraud, stating, in dicta, that "courts could still redress clerical mistakes via Rule 60(b) without fear of violating Section 1330(a)." 153 F.3d at 117 n.6. In that regard, some bankruptcy courts have "limit[ed] the use of Rule 60(b) to situations that involve a court's attempt to correct its own mistake in issuing the discharge or confirmation order," In re Magundayao, 313 B.R. 175, 178-79 (Bankr. S.D.N.Y. 2004) (citing cases), while other courts have allowed parties to revisit confirmation orders using Rules 9023 or 9024 "where there is a question about the aggrieved creditor having received adequate notice of the plan." In re Smith, 2009 WL 243396 at *4 (Bankr. D.Kan. Jan. 27, 2009) (citing cases). The § 1330 exception mentioned in Smith is the law in this District, as set out in In re Whelton, 312 B.R. 508 (D.Vt. 2004). The district court addressed the reach of § 1330 where a debtor had sought to discharge his student loan via a declaration in his chapter 13 plan, rather than by way of an adversary proceeding. The student loan creditor had not objected to its treatment in the debtor's plan and, as a result, the debtor raised the issue of the res judicata effect of the confirmed plan when the creditor finally objected to its treatment. This Court had granted the student loan creditor relief by vacating portions of the confirmation and discharge orders that had the effect of discharging the debtor's student loan. The debtor argued before the district court that § 1330(a) limited the circumstances under which a confirmation order could be revoked, citing Fesq. Because there had been no finding of fraud and the creditor's adversary proceeding had been filed more than 180 days after entry of the order of confirmation, the debtor argued that § 1330(a) governed and the bankruptcy court had lacked authority to vacate any portion of the confirmation order. The district court found Fesq inapposite because the bankruptcy court had dismissed the count of the complaint that sought revocation of the confirmation order and had instead invalidated only a portion of the order. Id. at 519. It observed that Fesq did not involve an illegal plan provision nor did it involve constitutionally deficient notice to the creditor, as was the case in Whelton, and held that the egregious constitutional violation arising from inadequate notice to the creditor trumped the statute; that § 1330 did not bar the creditor from seeking relief from the effect of the confirmation order due to that constitutionally deficient notice; and affirmed this Court's holding. Id. at 519-20. None of these exceptions to the Fesq holding are present in the case at bar and the Bank has not argued that the treatment of its claim in the Modified Plan should be deemed "void."

8

(b) <u>Relief from a Portion of the Modification Order</u>

The Bank's motion seeks in the alternative to strike only that provision of the Modification Order that defines the treatment of its claim. Even assuming that Rule 9024 could provide an avenue for this more limited relief (pursuant to Rule 60(b)(1)), the Bank has not met the excusable neglect standard that would establish a right to that relief. "The Second Circuit has declared that since [Rule] 60(b) allows extraordinary judicial relief, it is invoked only if the moving party meets its burden of demonstrating exceptional circumstances." <u>In re 401 East 89th St. Owners, Inc.</u>, 223 B.R. 75, 79 (Bankr. S.D.N.Y. 1998) (quoting <u>Paddington Partners v. Bouchard</u>, 34 F.3d 1132, 1142 (2d Cir. 1994)) (internal quotation marks omitted). "A movant must establish one of the enumerated grounds for relief under Federal Rule 60(b) and that the harm to the movant outweighs the necessity for finality in the order confirming the plan of reorganization." <u>IBF Fund Liquidating, LLC v. Chadmoore Wireless Group Inc. (In re Interbank Funding Corp.)</u>, 2007 WL 2080512 at * 2 (Bankr. S.D.N.Y. July 19, 2007).

> But despite the flexibility of 'excusable neglect' and the existence of the four-factor test in which three of the factors usually weigh in favor of the party seeking the extension, we and other circuits have focused on the third factor: "the reason for the delay, including whether it was within the reasonable control of the movant." We have noted that the equities will rarely if ever favor a party who "fail[s] to follow the clear dictates of a court rule" and held that where "the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the <u>Pioneer</u> test.

<u>Silivanch v. Celebrity Cruises, Inc.</u>, 333 F.3d 355, 366-67 (2d Cir. 2003) (quoting <u>Canfield v. Van Atta Buick/GMC Truck, Inc.</u>, 127 F.3d 248, 250-51 (2d Cir.1997)). "<u>Canfield</u> used, and made stricter, <u>Pioneer</u>'s (bankruptcy) definition of excusable neglect in the context of Federal Rule of Civil Procedure 60(b)." <u>Lynch v. IRS (In re Lynch)</u>, 430 F.3d 600, 604 (2d Cir. 2005).

To determine whether to grant the Bank's motion to strike a portion of the Modification Order based upon "excusable neglect," the Court must assess the rationale presented as to why the Bank did not file an objection to the Debtor's treatment of its claim in the Second Modified Plan. The Bank, however, did not set forth any circumstances to explain its "neglect" and, in fact, did not admit to any neglect whatsoever. Its only explanation for not filing a timely objection was that "the parties were acting in good faith to attempt to conclude a consensual sale of the property" (doc. # 44). This states what the parties were doing, but does not offer any facts elucidating why the Bank did not file a timely objection if it did not consent to the proposed treatment. As the Trustee observed in his objection to the Bank's motion (doc. # 45), there is simply nothing in the record that explains why the Bank did not file a brief objection to preserve its rights, while continuing to negotiate mutually acceptable terms for the liquidation of its collateral and treatment of its claim.

### III. Is the Bank Entitled to Relief from the Modification Order Due to Lack of Notice?

The Bank argues, as an alternative justification for reconsideration, that <u>res judicata</u> does not apply here because approval of the Second Modified Plan constituted a determination of the allowance of its claim under § 502 and a confirmation order may not determine whether a filed proof of claim is allowed. The Court finds this argument unpersuasive. In a recent case focusing on whether, and under what procedure, a chapter 13 debtor may surrender property to a secured creditor in full satisfaction of the creditor's claim, the court touched upon the question of the creditor's failure to file a timely objection to a plan which proposed this same type of surrender-in-full-satisfaction treatment. The court documented the current split in authority on this question:

> Where a debtor's plan expressly provides for surrender in full satisfaction of the creditor's claim, and sufficient notice has been given to the secured creditor of the proposed plan treatment, the failure of the secured creditor to object to confirmation may be found to be consent to surrender in full satisfaction. <u>See</u>, <u>e.g.</u>, <u>In re Basham</u>, 167 B.R. 903, 907-08 (Bankr. W.D. Mo. 1994) (holding that confirmation of a chapter 13 plan that provided for surrender in full satisfaction precluded a secured creditor's post-foreclosure deficiency claim, because the secured creditor had notice of the plan and did not object). There is a split among the circuits, with no controlling Second Circuit law, about the circumstances in which a secured creditor's consent to plan treatment arises from the failure to object to plan confirmation. <u>See</u> <u>Flynn v. Bankowski (In re Flynn)</u>, 402 B.R. 437, 444 (1st Cir. BAP 2009) (recognizing split and adopting the Third Circuit view that "acceptance may occur upon a secured creditor's failure to file a timely objection to a chapter 13 plan") (citing <u>In re Szostek</u>, 886 F 2d 1405, 1414 (3rd Cir 1989)).

<u>In re Sneijder</u>, 407 B.R. 46, 51 n.6 (Bankr. S.D.N.Y. 2009).

The facts and legal issue presented here are more analogous to those presented in <u>Layo</u>, where the Second Circuit held that the extent and validity of a mortgage lien as declared in a confirmed chapter 13 plan is not subject to collateral attack by a party who failed to file a timely objection to the plan. 460 F.3d at 294-95. In <u>Layo</u>, the trustee argued that <u>res judicata</u> did not bar her post-confirmation adversary proceeding challenging the validity of the creditor's mortgage because she had not been aware of the facts showing the invalidity of the mortgage prior to the confirmation of the plan and thus could not have challenged the treatment of that claim during the confirmation process. Although it appeared that the mortgagee's claim was not entitled to treatment as a secured claim, the Circuit Court refused to permit the trustee to attack the validity of the mortgage lien subsequent to entry of the confirmation order. The Court's holding was grounded squarely on the <u>res judicata</u> effect of confirmation orders and specifically held that none of the trustee's arguments could overcome the preclusive effect of the confirmation order:

> [T]he [movant] had both a motive and opportunity to confirm the status of real estate liens affecting the debtor's estate at or before the time that the plan was confirmed. The confirmation proceedings and the subsequent adversary proceedings to challenge the mortgages are thus considered identical under the fourth prong of our <u>Corbett</u> analysis.

10

Id. at 293.

For the same reasons, this Court rejects the Bank's "notice" argument that it should not be bound by the treatment of its claim in the Modification Order because that treatment was not in accord with the Bank's proof of claim and the Debtor never objected to that claim. See In re Coss, 2005 WL 5419055 at * 5 (Bankr. N.D.N.Y. July 14, 2005) (quoting 3 Keith M. Lundin, Chapter 13 Bankruptcy § 233.1 (3d ed. 2000 & Supp. 2002) for the proposition that "if notice was adequate the procedural due process rights of the secured claim holder are respected, a bankruptcy court order . . . defining what the secured claim holder will receive in satisfaction of its lien rights is binding on all parties without regard to the label on the process."). Not only did the Bank have the motive and opportunity to read the plan and ascertain the treatment proposed in time to file an objection, which the Layo Court described as critical, but it also had no less notice than it would have had if the Debtor had filed an objection to its claim.

The Court has also considered the Bank's arguments that the Debtor's treatment of the unsecured portion of the Bank's claim in the Second Modified Plan violated Bankruptcy Rule 3007 and Vt. LBR 3007-1(b) and finds them to be unavailing in light of the Court's findings with respect to the res judicata effect of the Modification Order.[6]

## CONCLUSION

The Court finds that the Bank has failed to demonstrate excusable neglect that would warrant reconsideration of the Modification Order, has failed to demonstrate fraud which would warrant revocation of the Modification Order, and has failed to show why its challenge to the treatment of its claim in the modified plan is not precluded by the res judicata effect of the Modification Order. Accordingly, the Court sustains the Trustee's objection and denies the Bank's Motion for Reconsideration on all grounds.

---

[6] Vt. LBR 3007-1(b) provides:
> (b) Objections to Claims in Chapter 12 and Chapter 13 Cases. In a Chapter 12 or Chapter 13 case, the case trustee, debtor, or any party in interest, may file an objection to the allowance of a claim. The objection may be directed at either the entire claim or a portion of the claim and may address either the amount or classification of the claim, provided the amount or classification of the claim has not already been determined through a valuation motion. See Vt. LBR 3012-1; see also Vt. LBR 3015-1(f)(1). Unless otherwise ordered by the Court, the objection to a timely filed claim must be filed within 60 days after the entry of the confirmation order or within 60 days after the governmental claims bar date, whichever is later. See also Bankruptcy Rule 3007. Nothing herein shall confer standing on any party that does not otherwise have standing.

In addition to the preclusive effect of the Modification Order disposing of this issue, the Court also notes that when considering the impact of the local rules, one must also take into account local practice. The practice in this District is that if a debtor proposes treatment in a plan inconsistent with the terms of a filed proof of claim, and the creditor did not consent to that plan treatment, the order confirming the plan sets out a time frame within which the debtor or trustee will file an objection to resolve the dispute. In that situation, the confirmation order will also specifically provide that the treatment in the plan is not binding on the holder of that claim. Here, the Bank did not request a provision in the Modification Order saying that the treatment of its claim would be determined through an objection to claim process, nor did it dispute the Debtor's representation in the motion to modify that the Bank had consented to this surrender-in-full-satisfaction treatment. Moreover, as noted above, when there is a conflict between the terms of a Bankruptcy Rule (or local rule) and the Bankruptcy Code, the substantive provisions of the Code control.

11

This constitutes the Court's findings of fact and conclusions of law.

|  |  |
|---|---|
|  | _____ |
| October 13, 2009 | Colleen A. Brown |
| Rutland, Vermont | United States Bankruptcy Judge |